FLORIDA EAST COAST RAILWAY COMPANY, *Plaintiff in Error*, v. CHARLES O. LASSITER, *Defendant in Error*.

1. Where a witness is called to testify as an expert or skilled witness upon a question pertaining to railroading, his qualifications are determined by considering the particular branch of the business in which he has been engaged, the length of time that he has served in a particular capacity, his opportunities for obtaining the requisite knowledge, skill and experience, and the relationship between the branch of the service in which he has been engaged and the question upon which he is called to give testimony.

2. A motion to strike testimony is available only when the testimony admitted is inadmissible, irrelevant and immaterial.

3. The usual conduct of employees required or permitted by railroad companies in the ordinary operation of trains is not wholly inadmissible or irrelevant upon a question of the care and diligence required in the proper conduct of the business.

4. Evidence that as a general custom it is usual for a switchman to ride on a car being switched when a duty is to be performed at the point of destination and the car is going faster than a man usually walks, is not contrary to but comports with common knowledge, and the act is not so obviously dangerous as to be manifestly inconsistent with safe railroad operation.

5. A mere showing that boys had access to the yard and that mischievous persons have meddled with cars is not relevant to an issue of due care in providing safe machinery and appliances.

6. There was no reversible error in permitting a witness on cross-examination to state that the doctor who attended the plaintiff when he was injured was the defendant's local surgeon, as such testimony did not go to the question of the liability of the defendant and the effect of the court's charge was to exclude injury to the defendant in increased damages on account of such testimony, even if the previous mention of the doctor and his attentions to the plaintiff did not justify the question on cross-examination.

7. Where the evidence is conflicting, it is not error to refuse an affirmative charge.

8. It is the duty of the master to exercise such ordinary and reasonable care as prudence and the exigencies of the situation require, in providing the servant with safe machinery and suitable instrumentalities for his work, and in notifying the servant of any defects or risks of which the servant does not know. If the duty is not performed the master is liable for injuries resulting proximately from such failure of duty.

9. Where it cannot be said as matter of law that the plaintiff's negligence in part caused his own injury, the question of contributory negligence should be submitted to the jury.

10. If two or more ways or methods were open to the plaintiff in the performance of his duties as switchman and he had no instructions to pursue one in particular, he necessarily must choose between them, and he cannot be held to have been negligent if he in good faith adopted that way or method which is more hazardous than another, provided the one pursued be one .that reasonable and prudent persons would adopt under like circumstances, or provided the plaintiff was reasonably prudent in adopting the way or method used. In all cases the employee is bound to use ordinary care for his own protection.

11. Charges that are not technically accurate will not cause a reversal where correct charges are given on the point and it appears that no injury could reasonably have resulted from the technical inaccuracy.

12. Where damages allowed are not clearly excessive an appellate court will not disturb a finding sustained by the evidence.

This case was decided by the court En Banc.

Writ of error to the Circuit Court for St. Lucie County.

The facts in the case are stated in the opinion of the court.

*George M. Robbins,* for Plaintiff in Error;

*Beggs & Palmer,* for Defendant in Error.

WHITFIELD, C. J.—The defendant in error recovered judgment for damages against the railroad company for personal injuries received by the running of a train while acting as yard switchman. A former judgment was

reversed. Florida East Coast Ry. v. Lassiter, 58 Fla., 234, 50 South. Rep. 428. A grab-iron on a freight car broke while the plaintiff was holding on by it and he fell under the car which passed over his left foot crushing it.

The negligence alleged to have proximately caused the injury is that the railroad company "carelessly and negligently permitted one of the grab-irons and its fastenings and appliances on said car to become defective and out of repairs." Pleas of not guilty and that the alleged injury was caused by the negligence and improper conduct of the plaintiff, and not otherwise, were filed.

In view of the former decision in this cause and the finding of two juries the liability of the defendant railroad company should be regarded as established unless material errors of law were committed in submitting the issue of liability to the jury in the last trial.

The plaintiff produced a witness who testified as to whether in his opinion it was necessary for the plaintiff in the proper discharge of his duty to ride on the side of the car being switched by putting his foot in the stirrup and holding on attached to the car for that purpose instead of walking, when he was injured.

In order to qualify himself this witness testified that he had lived in Fort Pierce where the injury occurred for fourteen years and was familiar with the switch yards of the defendant company at that point; that he had had ten years experience as a car inspector at Jacksonville, Palm Beach and Fort Pierce for the defendant; that he was familiar with the requirements of switchmen in the discharge of their duties, and was acquainted with the tracks and distances in the Fort Pierce yard, including those where the injury occurred, and had known the yard for eight years; that he had done switching but never under regular employment. The defendant objected to the witness on the ground that he had not

qualified as an expert. Exception was taken to the over-
ruling of the objection. In admitting the witness, the
court did not err and did not violate the rule contended
for by the railroad company, that "where a witness is
called to testify as an expert upon a question pertaining
to railroading, his qualifications are determined by con-
sidering the particular branch of the business in which
he has been engaged, the length of time that he has served
in a particular capacity, his opportunities for obtaining
the requisite knowledge, skill and experience, and the
relationship between the branch of the service in which
he has been engaged and the question upon which he is
called to give testimony." 5 Ency. of Ev. 543. The wit-
ness here was a skilled witness and was qualified as such.
See Atlantic Coast Line Ry. Co. v. Crosby, 53 Fla., 400,
text 439, 43 South. Rep., 318, and citations therein.

The branch of railroad business in which the witness
was engaged and the capacities in which he acted at
different times and his opportunities and experience suf-
ficiently qualify him as an expert or a skilled witness as
to the necessity for a yard switchman to ride on the car
being switched in the proper discharge of his duties as
switchman under given circumstances.

This expert or skilled witness testified that the plaintiff
by walking instead of riding on the car as he did could
not have gotten to the desired point in switching the car
on which he rode in time to properly discharge his duty,
and in answer to a question said to ride "would have
been the usual way." The defendant moved to strike the
last answer, but the court denied the motion and an
exception was noted. A motion to strike testimony is
available only when the testimony admitted is inad-
missible, irrelevant or immaterial.

The usual conduct of employees required or permitted
by railroad companies in the ordinary operation of

trains is not wholly inadmissible or irrelevant upon a question of the care and diligence required in the proper conduct of the business. Evidence that as a general custom it is usual for a switchman to ride on a car being switched when a duty is to be performed at the point of destination and the car is going faster than a man usually walks, is not contrary to but comports with common knowledge, and the act is not so obviously dangerous as to be manifestly inconsistent with safe railroad operation. The evidence was admissible under the circumstances here. See 29 Cyc., 609; Atlantic Coast Line Ry. v. Beazley, 54 Fla., 311, 45 South. Rep. 761.

The inquiry being made was not how the accident occurred, for there were eye witnesses to that; but whether the plaintiff was negligent in riding on the car that he was engaged in switching, instead of walking in the discharge of his duties.

A witness for the defendant testified that he and others had inspected the car a few hours before the injury and the hand grab was in perfect condition; that if the nut had been off the top bolt to the hand grab or grab-iron, he would have observed it. It was then offered to prove by the witness that boys had access to the yard and "to show particular instances where they did such things," as to meddle with the cars. The proffered testimony was rejected unless it was confined to the particular car. A mere showing that boys had access to the yard and that mischievous persons had meddled with cars is not relevant to an issue of due care in providing safe machinery and appliances.

There was no reversible error in permitting a witness on cross-examination to state that the doctor who attended the plaintiff when he was injured was the defendant's local surgeon, as such testimony did not go to the question of the liability of the defendant and the

effect of the courts' charge was to exclude injury to the defendant in increased damages on account of such testimony, even if the previous mention of the doctor and his attentions to the plaintiff did not justify the question on cross-examination.

As the facts in evidence did not conclusively show that the negligence of the plaintiff was a proximate cause of the injury, the refusal to direct a verdict for the defendant was proper.

It is the duty of the master to exercise such ordinary and reasonable care as prudence and the exigencies of the situation require, in providing the servant with safe machinery and suitable instrumentalities for his work, and in notifying the servant of any defects or risks of which the servant does not know. If this duty is not performed the master is liable for injuries resulting proximately from such failure of duty. German-American Lumber Co. v. Brock, 55 Fla., 577, 46 South. Rep. 740.

It does not appear that Lassiter violated any law or any rule of his employer, or that he was actually negligent in riding on the side of the car by having a foot in the stirrup and holding on to the grab-iron placed upon the car for the use of the switchmen and other such employes in mounting the car in the discharge of their duties; nor does it appear that such an act is apparently or specially hazardous or unusual or that the plaintiff knew of any defect in the car equipment or of any special hazard involved in his act. The law required of the plaintiff only the prudence of a prudent man, or ordinary prudence. It cannot be said as a matter of law that the act of riding on the side of the car as indicated was not the prudent act of an ordinarily prudent man and that it was negligence under the circumstances of this case, therefore the question of contributory negli-

gence was properly submitted to the jury. See Kilpatrick v. Grand Trunk Ry. Co., 74 Vt., 288, 52 Atl. Rep., 531, 93 Am. St. Rep., 887; Missouri, K. & T. Ry. Co. v. Hoskins, 34 Tex. Civ. App., 627, 79 S. W. Rep., 369; El Paso & S. W. Ry. Co. v. Vizard, 39 Tex. Civ. App., 534, 88 S. W. Rep., 457.

It may not have been necessary for the plaintiff in the discharge of his duty to ride as he did, and it may be that he could have as conveniently or effectively discharged his duty by walking, yet he was not a trespasser, he was not forbidden to ride, and it seems that he at least had the privilege of so riding by using the means provided by the defendant and usual in such cases, and the plaintiff had the right to rely on the reasonable safety of the grab-irons provided for use at any time convenient or proper and not obviously dangerous in the employment engaged in. It does not clearly appear that the plaintiff did not exercise ordinary care in riding as he did, and there was evidence from which the jury could find that the defendant did not furnish reasonably safe means for use in rendering the service and that the defective grab-iron was the proximate cause of the injury to the plaintiff. See El Paso & S. W. Ry. Co. v. Vizard, .. U. S., ..., 29 Sup. Ct. Rep., 210, and authorities cited; 3 Elliott on Railroads, Paragraph 1315d.

The refusal of the court to give the following instruction requested by the defendant was excepted to and is assigned as error. "The boarding of a train in motion is necessarily attended with more or less danger under any circumstances, and employees of railroads owe it to their own safety to abstain from attempting it unless the demands of duty make it necessary." The amended declaration alleges that "while the plaintiff as switchman of defendant as aforesaid was engaged in shifting and placing the car aforesaid, he *necessarily* attempted to get upon

said car by means of and by taking hold of the said defective grab-iron." This is not clearly an allegation that in the proper discharge of his duty the plaintiff "necessarily attempted to get upon the said car," but it is an allegation that "he necessarily attempted to get upon said car by means of and by taking hold of the said defective iron." This being so the *necessity* of riding was not expressly made an issue by the declaration.

The necessity of using the grab-iron in riding is not controverted. No issue involved in the pleadings made the refusal to give the requested charge error, especially as it is merely abstract and its substance was given in another charge in its proper application to the evidence.

If two or more ways or methods were open to the plaintiff in the performance of his duties as switchman and he had no instructions to pursue one in particular, he necessarily must choose between them, and he cannot be held to have been negligent if he in good faith adopted that way or method which is more hazardous than another, provided the one pursued be one that reasonable and prudent persons would adopt under like circumstances, or provided the plaintiff was reasonably prudent in adopting the way or method used. In all cases the employee is bound to use ordinary care for his own protection. See Florida Cent. & P. R. Co. v. Mooney, 40 Fla., 17, 24 South. Rep., 148. This rule is not in conflict with the one approved and cited by the defendant, viz: "If there are two ways of discharging the service apparent to the employee, one dangerous and the other less safe or dangerous, he must select the safe or less dangerous way; and can not recover for an injury sustained when the danger is imminent, and so obvious that a careful and prudent man would not incur the risk under the same circumstances." Mobile & O. R. Co. v. George, 94 Ala., 199, 10 South. Rep., 145. It does not

appear that there was obvious danger in riding, but from the evidence it may be inferred that the method pursued by the plaintiff was ordinarily and reasonably safe and proper to be used and that the plaintiff was not at fault. See Kiley v. Rutland R. Co., 80 Vt., 536, 68 Atl. Rep., 713, 13 Ann. Cas., 269. There is nothing in the testimony to indicate that the plaintiff in riding in the discharge of his duty as switchman selected an imprudent method of action, and it was not error to refuse a charge on this point.

The plaintiff was not injured in getting on the car, but fell when the grab-iron gave way, after he had ridden a short distance. The defect in the appliance is not shown to have been so obvious as to charge the plaintiff with notice of it, and charges that a previous inspection of the car with reasonable care would relieve the defendant of liability were properly refused as that does not properly state the measure of defendant's duty. Abstract charges as to the duty of jurors were not erroneously refused in view of the very full charges given.

The giving of each of the following charges was excepted to and assigned and urger as error: (1) "If you believe from the evidence that the plaintiff properly and necessarily mounted the car, either to get to its destination in time to make signals for stopping it at the coal pit, or to husband his strength by riding, for the full performance of his day's work, and that he was injured as already charged, by the negligence of his fellow servants, then you will find for the plaintiff, and award his damages according to the manner I have already specially charged you. (2) On the other hand, if you believe that the plaintiff wantonly and unnecessarily mounted when he might just as well have walked beyond the coal pit to make signals, or that he could by reasonable vigilance have seen that the nut was off the grab-iron bolt, and

have avoided the danger of mounting by the help of it, then you will find for the defendant." The first of these two charges was objected to because of the use of the phrase "or to husband his strength by riding for the full performance of his day's work." This language may be objectionable because argumentative and there may be no particular evidence as a basis for it, but taken in connection with other portions of the charges given it does not appear that it could reasonably have injured the de- ·fendant. The use of the word "wantonly" in the above charge is urged to be error because it "was equivalent to saying that unless the plaintiff was guilty of gross negligence in mounting the car he could recover" and was calculated to mislead the jury. While the word is not technically a correct one to use in expressing the law on the subject, yet the plaintiff could not recover under the circumstances as stated in the charge where the word appears, and the defendant was not injured.

The charge in effect is that if the defendant wantonly rode on the car, he cannot recover, not that unless he wantonly rode on the car, he may recover.

A technically inaccurate charge will not cause a reversal of a judgment where correct charges are given on the point and it appears that no injury could reasonably have resulted from the technical inaccuracy. See Mitchell v. State, 43 Fla., 584, 31 South. Rep., 242; Louisville & N. R. Co. v. Willis, 58 Fla., 307, 51 South. Rep. 134.

The use of the word "wantonly" in the quoted charge was technically incorrect, but several proper charges on the same point were given by the court, and the entire record clearly indicate that no injury could reasonably have resulted to the plaintiff in error from the giving of the technically inaccurate charge. The charge therefore is harmless in this case. Johnson v. State, 29 Fla., 558,

10 South. Rep., 686; Keech v. Enriquez, 28 Fla., 597, 10 South. Rep., 91.

The court several times instructed the jury that if they found the plaintiff was negligent or in any appreciable degree contributed to the injury he could not recover, and specifically that:

"6.  You are called upon to decide from the evidence, whether it was necessary for the plaintiff, under all the circumstances, to board the car from which he fell in order to discharge his duty properly; or whether he could have performed his duty as well by remaining on the ground.  If you decide that there was no occasion for him to mount the moving car, but that he did so for his own convenience, then he assumed the risk himself, and he cannot recover in this suit, even though the injury he suffered was due to the negligence of a fellow servant of the company.

8.  Where recovery is sought against a railroad company for injuries received as a consequence of the negligence of another employee of the company, the one injured must have done nothing negligently to contribute to his injury, and must have neglected to do nothing to prevent the consequences of the negligence of the other employee.

10.  It is for you to determine whether, under the circumstances of this case, the plaintiff, by his conduct, contributed in an appreciable degree to the cause of the injury he suffered, and if you find from the evidence that there was negligence on his part that contributed to his injury, your verdict should be for the defendant."

These instructions with others given rendered the requested charges unnecessary for a full and fair consideration of the case.  The question of the liability of the defendant appears to have been fairly presented to the

jury and there is ample evidence to justify the finding of liability. The court refused to give the following charge: "If you believe from the evidence that the operation performed on the plaintiff's foot by Dr. Worley on May 13th, 1906, the one, I mean, where the plaintiff says the cushion was cut off— If you should believe that this operation was not the best that could have been done, or that it was made necessary by Dr. Lloyd's previous treatment, and that any disability has resulted therefrom that could have been avoided if the wound had had proper treatment in the first instance, you cannot hold the defendant railroad company responsible therefor, or award any damages against it on that account."

This refusal was not reversible error since the court at the defendant's request charged as follows:

"1. The plaintiff has failed to produce to you evidence upon which a recovery might be had upon the second count in his declaration. This count was for damages said to have resulted from the improper treatment of defendant's foot by Dr. Lloyd. Whatever may have been Dr. Lloyd's treatment and the injuries resulting from it, as shown by the evidence, Dr. Lloyd alone is answerable for. You cannot give damages against the defendant railroad company on that account.

2. If you find from the evidence that there was improper treatment of plaintiff's foot by Dr. Lloyd and that this enhanced his injury and has increased his disability, you cannot award damages against the defendant railroad company for the entire injury and disability, but must make a proper allowance for that part of the damage which you attribute, from the evidence, to the treatment of the wound by Dr. Lloyd, and the same is true as to pain and suffering, a proper deduction should be made for that part of it, if any, that you find from the evidence was due to Dr. Lloyd's treatment of the wound.

3. If you should find from the evidence that the plaintiff is entitled to recover and that his earning capacity for the rest of his expectancy of life has been lessened, you should also determine to what extent the evidence shows that this is due to the injury received by the crushing of the foot by the car-wheel and how much, if any, is due to the manner in which the foot was treated by the physician, Dr. Lloyd; and having ascertained the injury due to such diminished earning capacity and made proper allowances for that attributable to the treatment of the injury by Dr. Lloyd, you should reduce the residue to its present value and such present value thereof only should be included in your verdict."

It is urged that the rules for the admeasurement of compensatory damages in a case like this were not correctly applied by the jury and that the verdict for $7,458.00 damages is excessive.

It was for the jury to determine from the evidence whether the plaintiff was at fault or negligent in the manner in which he rode on the side of the car, and this consideration goes to the question of liability and not to the amount of recovery since the statutory rule of comparative negligence does not apply to employees. Even if the unskillful treatment of the wound by one or more of the physicians caused successive operations and a part of the permanent injury, the accident itself caused the loss of the front part of the foot and attendant suffering, loss of time, diminished earning capacity, &c., &c., as shown by the testimony, and it cannot be held on this record that the jury were not governed by the evidence in fixing the damages or that the amount is so unreasonable and unjust as to warrant a reversal here.

The judgment is affirmed.

SHACKLEFORD, HOCKER and PARKHILL, J. J., concur.

TAYLOR, J., dissents.

COCKRELL, J., absent, concurred in the opinion as prepared.